# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1129

CARLTON DALE FONTENOT

VERSUS

RYDER TRUCK RENTAL, INC.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 79280-E
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

**********

## JOHN D. SAUNDERS
## JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and Billy Howard Ezell, Judges.

**AFFIRMED.**

J. Isaac Funderburk
Nancy Dunning
Funderburk & Herpin
P. O. Drawer 1030
Abbeville, LA 70511-1030
(337) 893-8980
Counsel for: Defendant/Appellant
        Ryder Truck Rental, Inc.

Alvin J. Bordelon, Jr.
Bordelon, Hamlin & Theriot
701 S. Peters Street, Suite 100
New Orleans, LA 70130
(504) 524-5328
Counsel for: Defendant/Appellant
        Ryder Truck Rental, Inc.

**Joseph Charles Kosarek**
**Attorney At Law**
**P. O. Drawer 489**
**Abbeville, LA 70511-0489**
**(337) 893-8980**
**Counsel for: Plaintiff/Appellee**
    **Carlton Dale Fontenot**

**SAUNDERS, Judge.**

Ryder Truck Rental, Inc. ("Ryder") appeals the judgment of the trial court in favor of Carlton Dale Fontenot ("Fontenot"), awarding him earned but unpaid vacation wages, as well as penalties and attorney fees for the bad faith actions of Ryder. For the following reasons, we affirm.

**FACTS**

Ryder hired Fontenot on November 27, 1978. Fontenot remained an employee of Ryder from this hire date until his retirement on November 30, 2002. At the time Fontenot was hired, Ryder's vacation policy provided that an employee earned a certain amount of vacation time for every year of employment effective on the employee's anniversary of his hire date. The vacation time earned in each year of employment was to be used the following year. For example, on November 27, 1979, following his first year of employment with Ryder, Fontenot earned vacation time according to the schedule set out by Ryder. The Ryder vacation policy was what is commonly referred to as a "use it or lose it" policy. Therefore, the vacation days earned by Fontenot during the year of employment from November 27, 1978, to November 27, 1979, were to be used by his following anniversary date of November 27, 1980. Any days not used during that year were subsequently forfeited by the employee. They did not carry over to the following year. This policy was repeated annually.

In December of 2000, Ryder announced to its employees that it would be changing its vacation policy. This new vacation policy would be geared to the calendar year and not to the employee's date of hire. The policy provided that every employee would be credited with vacation days as of January 1 of each calendar year in an amount determined based on the employee's years of service. Following the

advancement of these vacation days on January 1 of each calendar year, the employees were required to use, or take, the number of vacation days advanced within the same calendar year. As with the prior policy, this new vacation policy was also a "use it or lose it" policy, meaning any vacation days not used by the employee during that year would be lost.

Under this new policy, any employee whose employment terminated during the calendar year and who had not taken all of the vacation days earned would be paid by Ryder for those days. Similarly, any employee whose employment terminated during the calendar year and who had used more vacation days than he had earned would be required to reimburse Ryder for those unearned days from his last paycheck.

In December of 2000, when Ryder announced this new vacation policy, the employees were instructed to fill out vacation calculation worksheets that were provided by Ryder to calculate the vacation days that they would have to use during the 2001 calendar year, as a result of the shift from the old vacation system to the new one. According to the December 2000 revision to the vacation plan, in addition to the twenty vacation days he had earned during his employment from November 27, 1999 to November 27, 2000, Fontenot also earned three vacation days during the period between his anniversary of hire on November 27, 2000, and December 31, 2000, the last day of the old vacation policy. Based on the December 2000 policy revision, Fontenot was to fill out the provided worksheet with the twenty-three vacation days earned under the old policy, which Ryder was required to provide by law. In addition to these twenty-three days, the worksheet instructed Fontenot to include the twenty days for which he would be credited on January 1, 2001, representing the vacation time he would earn during the 2001 calendar year under the new policy that took effect on January 1, 2001. Therefore, based on this worksheet Fontenot filled out

2

pursuant to Ryder's instructions, he had a total of forty-three vacation days available to him during the 2001 calendar year.

At some point during January of 2001, Ryder issued another vacation policy, which forfeited all vacation time credited to Ryder's existing employees for the 2001 calendar year under the revised policy that took effect January 1, 2001. This policy was accompanied by another vacation calculation worksheet, which the employees filled out. Under this vacation policy, Fontenot received the twenty-three vacation days he had earned under the old policy in effect until December 31, 2000, but received no vacation days for the 2001 calendar year. Fontenot remained an employee of Ryder until his retirement on November 30, 2002.

Following his retirement Ryder paid Fontenot $3,900.34 as compensation for vacation time he earned during the 2002 calendar year but did not use. Fontenot made a written demand for compensation for the twenty vacation days credited for use on January 1, 2001, that had been subsequently removed from his vacation time by Ryder following their second revision of the vacation plan implemented in 2001. Fontenot filed a Rule for Unpaid Wages, Penalty Wages, and Attorney Fees, when Ryder refused to compensate him for the vacation days.

Following the May 12, 2003 hearing on this matter, the trial court issued its judgment in favor of Fontenot and against Ryder, awarding Fontenot $4,720.24 for earned vacation pay, $15,172.20 in penalty wages for Ryder's bad faith actions relating to the revised vacation policy, and $2,187.50 as reimbursement to Fontenot for attorney's fees. In his reasons for judgment the trial judge stated:

> If there would have been any honesty about it. And I'm not going to attribute dishonesty, but I'm going to tell you this, I think on some level, within Ryder, somebody figured out, hey, Ryder can get a huge windfall. We're talking about millions of dollars. By simply changing the calendar year. It will be portrayed – The biggest mistake Ryder

3

made was in putting out that December 2000 [sic], which was actually accurate, and they said: Oh, Jesus, look at all we're giving them. But the employees will still be happy if we give them twenty-three (23) instead of forty-three (43), they're going to be happy. If they had given them twenty-three (23) at the beginning, most people would have said, oh, boy, we're getting a windfall. Actually, they were being short-changed. Ryder showed their hand with the December 2000 policy worksheet, and then tried to take it back.

. . . .

But in January of 2001, somebody in Ryder said, wait a minute, man, – I'm not sure if they seized an opportunity to take twenty (20) days of vacation from every employee, or somebody felt forty-three (43) days was too much. But, in effect, what they did with the January 2001 policy was take twenty (20) days vacation for every employee who was entitled to twenty (20) days. If they were entitled to ten (10), they took ten (10). If they were entitled to fifteen (15) – In effect, no employee was given credit for the year they worked in 2001. Okay?

. . . .

Now, did they go to great lengths to make it look like they had? Yes. Because [sic] in fact, he got to take twenty-three (23) days vacation in 2001. But the kicker was, this was not for 2001 this was for before December 31st, 2000. Okay? And if you're following the talking points that were brought out, there was a real determined effort to sell the employees on the idea of, look, you're going to get – we have to transition, and it's because of the anniversary date, but there's the other little problem that's not spoken. The employees were not told "We're not giving you credit for the vacation you earned in 2001." Look at the talking points and find that. Because that's the truth.

Ryder presents the following issues on appeal:

1. Did plaintiff earn the disputed 20 days vacation time under the defendant's stated vacation policy so that compensation for these days was payable at the time of his retirement and recoverable under La.R.S. 23:631?

2. Did defendant have any equitable defense to plaintiff's demand for payment of his alleged 20 days of unused vacation time thus precluding defendant from penalty liability under La.R.S. 23:632?

3. Does plaintiff have a well-founded claim to the disputed 20 vacation days so as to render defendant liabel for attorney's fees under La.R.S. 23:632?

**DISCUSSION**

4

The appropriate standard of review for appellate courts concerning the factual findings of a trial court or jury is well established. We may not set aside the factual findings of the trial court absent manifest error or unless they are clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). In *Sistler v. Liberty Mutual Insurance Co.*, 558 So.2d 1106, 1112 (La.1990), the supreme court further clarified this standard, stating:

> [T]he appellate court's disagreement with the trial court, alone, is not grounds for substituting its judgment for that of the trier of fact. *Borden, Inc. v. Howard Trucking Co., Inc.*, 454 So.2d 1081 (La.1983). If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Rosell*, supra. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.*; *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978).

Employees are entitled to earned vacation pay based on La.R.S. 23:631, which states in relevant part:

> D. (1) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:
>
> (a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
>
> (b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.
>
> (2) The provisions of this Subsection shall not be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer's policy.

Additionally, La.R.S. 23:632 provides that employers are subject to penalties for violation of La. R.S. 23:631. Louisiana Revised Statute 23:632 states in pertinent part:

5

Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

Ryder argues that Fontenot did not earn forty-three vacation days during 2001. Based on the revised vacation policy distributed in January of 2001, Ryder claims that no vacation days were credited to employees for the 2001 calendar year. During what Ryder refers to as the "transition" year of 2001, employees did not earn vacation time and were allowed to use only the vacation days they had accrued under the previous policy in place until December 31, 2000. Under the new vacation policy, Ryder argues that Fontenot was entitled to twenty-three vacation days as earned under the previous policy and based on his years of service with the company.

Ryder admits that the original vacation calculation worksheet accompanying the new vacation policy distributed in December of 2000 indicated that Fontenot would be eligible to use forty-three vacation days during the 2001 calendar year. The twenty-three vacation days he earned in 2000 under the prior policy that accrued in 2001, as well as twenty vacation days for the 2001 calendar year, would be credited to him on January 1, 2001, when the new policy took effect. However, Ryder argues that this worksheet contained a mistake, and it never intended for its employees to earn vacation days during the 2001 transition year. Ryder claims that upon discovering this mistake in the original worksheet, it immediately acted to correct it, and, in January of 2001, Ryder distributed a new vacation calculation worksheet. Under the instructions accompanying that new worksheet, Fontenot was entitled only

6

to the twenty-three vacation days earned during 2000, and was given no vacation days for his employment during the 2001 calendar year.

Ryder argues that this erroneous worksheet only created an "expectancy" of a future benefit in the form of vacation time to be earned during employment in 2001, therefore; Fontenot never earned the twenty additional vacation days for which he is currently seeking compensation. Ryder claims that the trial judge either misconstrued Ryder's vacation policy or erroneously concluded that an employee has a right to earn paid vacation no matter what the employer's vacation policy provides. Ryder also argues that the trial court confused earning vacation days with credited vacation time under this new policy. It contends that credited vacation time is not earned until the employee works throughout the year. Therefore, any vacation days credited to Fontenot with the December 2000 vacation calculation worksheet were reclaimed by Ryder before Fontenot had earned it. As Fontenot had no vested interest in those twenty vacation days, according to Ryder, he cannot seek compensation for them now.

Alternatively, Ryder contends that even if we should find that Fontenot earned an additional twenty days of paid vacation during 2001, those days were forfeited by non-use under Ryder's unchanged "use it or lose it" policy. Therefore, because Fontenot did not use the twenty days during the 2001 calendar year, he lost them on December 31, 2001, and has no ability to claim a right to be compensated for them now.

Fontenot, on the other had, contends that Ryder acted in bad faith in the way it revised and re-revised its vacation policy. He claims Ryder's contentions that there was a misinterpretation or misapplication of the vacation policy's worksheet are unsupportable in light of the clear evidence showing otherwise. He argues that Ryder's contention that 2001 was a transition year for this policy is a "smoke and

7

mirrors" campaign designed to disguise the facts of this case. The facts that Fontenot argues, show that Ryder took away a benefit that had already been granted to its employees, and more particularly, that Ryder took away that benefit after realizing that their new vacation policy would create a large financial liability on the company during 2001.

Fontenot claims that once the vacation days were credited to Ryder's employees on January 1, 2001, the employee's right to those vacation days had vested, as they would have been able to use them immediately. Therefore, Ryder's refusal to allow its employees to use the vacation days was a violation of La.R.S. 23:631. Ryder had no authority to retroactively rescind the vacation time credited to its employees on January 1, 2001.

Fontenot further urges that any vacation policy of an employer providing for forfeiture of earned vacation in any manner must be clear and unequivocal, and that any ambiguity will be interpreted against the employer. *See Baudoin v. Vermilion Parish Sch. Bd.*, 96-1604 (La.App. 3 Cir. 4/2/97), 692 So.2d 1316, *writ denied*, 97-1169 (La. 6/20/97), 695 So.2d 1358. He urges that these two vacation policies, issued within weeks of one another, are nothing if not questionable, and that the policies' ambiguities must be interpreted in his favor and against Ryder. Fontenot also emphasizes that Ryder employees testified at trial that he was unable to use the disputed twenty days of earned vacation during the 2001 calendar year and that had he insisted that he be allowed to take those vacation days, he would have suffered adverse employment consequences. As a result of this admission by Ryder, Fontenot contends that he cannot justifiably be penalized for failing to use vacation days that Ryder had denied he was entitled to and refused to allow him to take.

The specifics of the various vacation policies implemented by Ryder are

8

complicated and somewhat difficult to rectify on first glance. Following a careful review of the record, and specifically the December 2000 and January 2001 revisions to Ryder's vacation policy, we find that the updated and "revised" vacation policy distributed in January of 2001 still indicates that employees would earn vacation days in the 2001 calendar year, despite the fact that the vacation calculation worksheet seems to indicate otherwise. The comparison of the documentation accompanying each of these vacation policies, examined in conjunction with Ryder's briefs and trial testimony, reveals a staggering number of inconsistences and inaccuracies concerning what this new vacation policy was included. It is highly unlikely that Ryder's employees could have made sense of this "revised" policy and understood that they were not earning vacation days during 2001. The policy explicitly states that they would earn vacation days during 2001.

As stated in Ryder's Revised 2001 U.S. Employee Vacation Program, page 2, which was distributed in January of 2001, allegedly correcting the mistakes appearing in the worksheet distributed in December of 2000:

> **What Program Features Stayed the Same**:
> The improvements to Ryder's Employee Vacation Program are still applicable and are listed below:
>
>> Transition from an award of vacation time beginning on the first anniversary of an employee's hiring date to awarding vacation at the beginning of each calendar year (January 1 - December 31) - *Beginning January 1, 2001* employees *will earn* vacation time on a pro rata basis throughout the calendar year.
>>
>> . . . .
>>
>> Improvements in the amount of vacation for new employees - New employees hired after January 1, 2001 will receive up to 10 vacation days during their first year of service, rather than having to complete a full year of service before being eligible for vacation (as was the case under the precious vacation policy).

(Emphasis added).

9

Ryder also states on the "Fact Sheet" provided with the January 2001 materials accompanying the "revised" vacation policy:

> *Effective January 1, 2001*, Ryder will be transitioning from awards of vacation time based on employees' anniversary dates to awarding vacation time at the beginning of each calendar year (January 1 - December 31). *Vacation time will be earned on a pro rata basis throughout the calendar year.* This means that employees can take vacation time at any time during the year, contingent upon approval from their manager.

(Emphasis added).

By the clear language of its own policy materials, even the second revised policy awarded vacation time to existing employees during the 2001 calendar year. In the "Talking Points" given to managers with the January 2001 materials and which are referred to by the trial judge in his reasons for judgment, Ryder states in point 4:

> The revised 2001 vacation program outlined in this package now offers each employee the greater of the sum of his/her earned but unused vacation days *plus* the accrued vacation days earned through December 31, 2000, **OR**, the standard number of vacation days given to an employee annually (beginning January 1, 2001) based on years of service.

Ryder states that employees will earn vacation on a pro rata basis *beginning* January 1, 2001, and then allows employees to take only "the greater of 20 days *or* the sum of earned but unused and accrued vacation through December 31, 2000." Use of "*or*" in the above quotes clearly indicates that employees either are being denied the vacation days they earned by working in 2000 or are being denied the vacation days Ryder indicates they will be credited for and then earn on a pro rata basis during the 2001 calendar year according to the language of this policy. In either case, employees are being denied vacation days to which they are entitled. As noted by the trial judge, there is nothing in the materials explicitly telling employees that they will not earn any vacation time during the 2001 calendar year. To the contrary, the materials repeatedly

10

state that, under the new policy, employees will be credited at the beginning of each calendar year and that the new policy is *effective on January 1, 2001.*

Ryder contends that the first worksheet accompanying the policy revisions was drawn erroneously. This worksheet was accompanied by several examples which clearly illustrated that as a result of converting to the new vacation system, many employee's vacation days usable during 2001 would greatly exceed the ten, fifteen, or twenty vacation days normally available to them. This was clearly not only an error in the worksheet. The fact that vacation time available to employees during 2001 would likely exceed their previously available vacation time was clearly stated throughout the policy, and management was repeatedly encouraged to emphasize to their employees that all of this additional time must be used by December 31, 2001, or it would be lost under the terms of the policy. Prior to circulation of the "erroneous" vacation calculation worksheet, Ryder distributed a question and answer sheet to its management in an attempt to help them deal with employees questions concerning the new policy. In the document the following sample question was presented:

> **I'm a manager with several long-tenured employees reporting to me. With the one-time transition, these employees have 30 and 40 days of vacation! How am I supposed to manage the workflow of my department with employees taking so much vacation?**
>
> To manage several employees with significantly increased amounts of vacation time in 2001, we recommend you and they plan *now* for their time off. You should be coordinating vacation time between employees and scheduling that time *well in advance* to ensure that you have the coverage you need at all times during the year – just as you would under normal circumstances. Remember that this is a one time transition that will impact you and your employees only in 2001.

This quote belies Ryder's contention that the first vacation calculation worksheet distributed was only "a mistake." In one breath Ryder contends that this

11

was the result of an error in "one box on this worksheet," yet in another, it contends that it was an error in the policy itself. The quote above shows, without a doubt, that at the time Ryder distributed the first revised policy in December, it fully intended to provide its existing employees a credit for vacation time to be earned throughout the 2001 calendar year. In light of these glaring inconsistencies, we find Ryder's claims, both in briefs and at trial, that employees were not given any vacation time during the 2001 calendar year, to be unfounded.

We find it somewhat problematic that new employees hired during 2001 would immediately be credited vacation days, which they could use immediately and then "earn" by working during the 2001 calendar year. This is wholly contradictory to Ryder's statement that employees would not earn vacation days during the 2001 transition year. This appears to be additional evidence that this second "revised" vacation policy was not the correction of some mistake made in the materials originally provided to employees concerning the new vacation policy but, instead, was developed when Ryder learned that the new vacation policy would create a financial burden on the company during 2001.

We also find Ryder's alternative argument without merit. We find it astounding that Ryder would even attempt to argue that even had Fontenot earned these disputed twenty days in 2001, his failure to use them during the 2001 calendar year resulted in his forfeiture of the vacation time, and therefore, it is under no obligation to compensate him for those days now. When Fontenot inquired as to his ability to use the twenty vacation days, his supervisors specifically told him he could not use them. Ryder cannot deny their employees from using their rightly earned vacation time, and then argue that their failure to use that time caused them to forfeit any right to it. That argument is absurd and would allow employers to reap a huge financial benefit by

systematically refusing to allow employees the right to use their earned vacation time, and then, refusing to compensate them for it. This is precisely the behavior prohibited by Louisiana statute, and the ability to even make such a claim provides a revealing glimpse into the motivation behind Ryder's actions concerning this vacation policy.

It seems clear to this court that Ryder did not "make a mistake" in the vacation policy distributed in December 2000, as they repeatedly contend. As the trial court held, it seems clear that Ryder became aware of the financial liability created in 2001 with the implementation of its new vacation plan and attempted to find ways to reduce their financial liability, while still making it appear to its employees that they were receiving all the vacation days they were entitled to plus added benefits. Ryder failed to resolve the glaring inconsistences between the policy materials provided to its employees and the statements in its briefs and at trial concerning how this policy was to operate. It was within the province of the trial judge to determine that the testimony of Ryder's employees, attempting to justify its failure to grant Fontenot his 2001 vacation pay, was not credible. Based on our review of the record, Ryder's employees did not receive all the vacation time they were entitled to under the revised vacation policy.

For the reasons stated above, the trial court did not commit manifest error when it ruled that Ryder denied its employees vacation earnings due them under the Ryder vacation policy. We affirm the trial court's award of past-due vacation wages.

We similarly find no manifest error in the trial court's determination that Ryder's actions with respect to the development and implementation of its new vacation policy were in bad faith. Therefore, we find no error in the trial court's award of penalties and attorney's fees, as allowed under La.R.S. 23:632.

**DECREE**

13

For the above reasons, we affirm the judgment of the trial court granting Fontenot four weeks vacation pay, penalties of ninety days wages, and attorney's fees. All costs of this appeal are cast to Ryder.

**AFFIRMED.**