STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-453

BRIAN BURNS

VERSUS

NATIONAL COMMUNICATIONS, INC.

************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2003-5405
HONORABLE RICK BRYANT, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of John D. Saunders, James T. Genovese, and Chris J. Roy, Sr.,*
Judges.

REVERSED AND RENDERED.

John J. Simpson
Post Office Box 2900
Lake Charles, Louisiana 70602
(337) 436-9491
Counsel for Plaintiff/Appellant:
    Brian Burns

Charles H. Hollis
Vasilios Manthos
The Kullman Firm
Post Office Box 60118
New Orleans, Louisiana 70160
(504) 524-4162
Counsel for Defendant/Appellee:
    National Communications, Inc.

---

*Honorable Chris J. Roy, Sr., participated in this decision by appointment of the Louisiana
Supreme Court as Judge Pro Tempore.

**GENOVESE, Judge.**

Brian Burns appeals the trial court judgment denying him penalty wages for the breach of his employment contract by his former employer, National Communications, Inc. (National). For the following reasons, we reverse and render.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 21, 2002, Mr. Burns signed a two-year employment contract to be a news anchorman on KVHP-TV, a television station in Lake Charles, Louisiana, which is owned by National. The employment contract, which commenced on October 30, 2002, provided that "[National] may terminate this agreement at anytime providing that [National] notify [Mr. Burns] in writing of such intent at least ninety (90) days prior to the determined date of termination." On April 4, 2003, Mr. John Korbel, the News Director for KVHP-TV, personally delivered to Mr. Burns a letter entitled "Personal Services Contract Release" wherein it stated that National "inten[ded] to fulfill its obligations under our contract and ensure[] continuation as provided through June 25, 2003, under the [ninety]-day termination provision of that agreement." The last day of Mr. Burns's employment at KVHP-TV was on June 25, 2003.

On October 8, 2003, Mr. Burns filed suit against National for its breach of their employment contract in violation of La.R.S. 23:631, seeking penalty wages and attorney fees pursuant to La.R.S. 23:632. He alleged that National breached their employment contract by not providing him with the required ninety-day notice as required by the contract, in violation of La.R.S. 23:631. Specifically, Mr. Burns contends that National provided him with only eighty-two days notice. Therefore, Mr. Burns asserted that he was entitled to penalty wages and attorney fees pursuant

2

to La.R.S. 23:632 for National's breach of the terms of their employment contract, in violation of La.R.S. 23:631.

National answered the lawsuit denying that it breached the terms of the employment contract. Specifically, National asserted "that [Mr. Burns] is in error and is mistaken in his allegation that he was not given ninety days notice."

A bench trial was held on September 25, 2007. At trial, National argued that, prior to writing the termination letter, it had determined that Mr. Burns had taken excess "comp time[1]" in the amount of eight days. In substantiation of this allegation, Mr. Korbel testified at trial that, using company records, he had determined that Mr. Burns had taken excess comp time in the amount of eight days. According to Mr. Korbel, after this determination had been made, he and Ms. Chrissy Irwin, National's Business Manager, subtracted the eight days of excess comp days that Mr. Burns had taken from the ninety-day notice period when they calculated Mr. Burns' pay up through his last day at the station. Ms. Irwin's testimony at trial reiterated this calculation methodology.

After taking this matter under advisement, the trial court rendered its judgment on December 1, 2007, wherein National was ordered to pay $1,280.00 in wages to Mr. Burns. The judgment also provided, in relevant part:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the penalty wages sought by [Mr. Burns] are denied;

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Mr. Burns] is entitled to attorney fees pursuant to [La.R.S.] 23:632 and that National . . . is cast in judgment for attorney fees in the amount of $10,000[.00.]

Mr. Burns appeals the part of the judgment denying him penalty wages and

---

[1]Though "comp time" was not defined in the employment contract, it was generally referred to as vacation time.

3

seeks attorney fees for work done on appeal.

## ASSIGNMENTS OF ERROR

Mr. Burns contends that:

I.     The [t]rial [c]ourt [c]ommitted [l]egal [e]rror [b]y [f]ailing to [a]ward [p]enalty [w]ages [p]ursuant [t]o [La.R.S.] 23:632 [a]fter [f]inding Mr. Burns [e]ntitled to the [w]ages [d]ue.

II.    The [t]rial [c]ourt [c]ommitted [l]egal [e]rror [b]y [i]gnoring [t]he [a]dmissions [o]f [t]he Defendant [i]n [i]ts [s]ummary [j]udgment [p]leadings [a]nd [c]onsidering [i]ts [c]ontrary [p]osition [a]t [t]rial.

III.   Appellant [s]eeks [a]dditional [attorney] [f]ees [m]ade [n]ecessary [b]y [t]he [t]rial [c]ourt['s] [f]ailure [t]o [a]ward [p]enalty [w]ages.

## LAW

The appropriate standard of review for appellate courts in a case such as this is the manifest error standard; thus, this court may not set aside the trial court's findings of fact in the absence of manifest error or unless they are clearly wrong. *Fontenot v. Ryder Truck Rental, Inc.*, 03-1129 (La.App. 3 Cir. 3/24/04), 869 So.2d 330 (citing *Rosell v. ESCO*, 549 So.2d 840 (La.1989)).

Louisiana Revised Statutes 23:631 provides:

A. (1)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

(b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during

4

which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

(2) Payment shall be made at the place and in the manner which has been customary during the employment, except that payment may be made via United States mail to the laborer or other employee, provided postage has been prepaid and the envelope properly addressed with the employee's or laborer's current address as shown in the employer's records. In the event payment is made by mail the employer shall be deemed to have made such payment when it is mailed. The timeliness of the mailing may be shown by an official United States postmark or other official documentation from the United States Postal Service.

(3) The provisions of this Subsection shall not apply when there is a collective bargaining agreement between the employer and the laborer or other employee which provides otherwise.

B. In the event of a dispute as to the amount due under this Section, the employer shall pay the undisputed portion of the amount due as provided for in Subsection A of this Section. The employee shall have the right to file an action to enforce such a wage claim and proceed pursuant to Code of Civil Procedure Article 2592.

C. With respect to interstate common carriers by rail, a legal holiday shall not be considered in computing the fifteen-day period provided for in Subsection A of this Section.

D. (1) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:

(a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.

(b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.

(2) The provisions of this Subsection shall not be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer's policy.

Louisiana Revised Statutes 23:632 provides:

> Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

Our supreme court in *Wyatt v. Avoyelles Parish School Board*, 01-3180, p. 15 (La. 12/4/02), 831 So.2d 906, 916-17, declared:

> La. R.S. 23:632 is a penal statute that must be strictly construed and may yield to equitable results. *Beard [v. Summit Inst. of Pulmonary Med. & Rehab., Inc.*, 97-1784 at p. 7, 707 So.2d at 1236 (citing *Bannon v. Techeland Oil Corp.*, 205 La. 689, 693, 17 So.2d 921 (1944)). This court has previously stated that "a good-faith non-arbitrary defense to liability for unpaid wages, i.e., a reasonable basis for resisting liability" permits a court to decline to impose penalty wages on an employer. *Beard*, 97-1784, p. 7, 707 So.2d at 1236 (citing *Carriere v. Pee Wee's Equipment Co.*, 364 So.2d 555, 557 (La.1978)).

## DISCUSSION

Mr. Burns contends that La.R.S. 23:631 requires that, upon the discharge of an employee, the employer has a duty to pay the amount then due under the terms of employment on or before the next regular payday or no later than fifteen days following the date of discharge. Mr. Burns asserts that, under the terms of his employment contract, he was entitled to work and earn wages through July 3, 2003; however, National discharged him on June 25, 2003, which Mr. Burns contends was eight days premature under the terms of their contract. Mr. Burns asserts that, when National did ultimately make an unconditional tender of the wages owed to him, it was not until November 26, 2003, some ninety days after he made legal demand. Due

6

to National's failure to comply with La.R.S. 23:631, Mr. Burns argues that National is also liable for penalty wages pursuant to La.R.S. 23:632. He asserts, in brief, that the trial court erred when it only assessed National with attorney fees pursuant to La.R.S 23:632 and not with both attorney fees and penalty wages. Finally, Mr. Burns asserts that he is entitled to additional attorney fees for the work done on the instant appeal.

National argues that the trial court was correct in its finding that it had a good faith, reasonable belief that it was entitled to an offset for comp time used by Mr. Burns as substantiated by the trial testimony of Mr. Korbel and Ms. Irwin. However, we note that neither Mr. Korbel nor Ms. Irwin produced documentary evidence to substantiate such assertion. Our review of the record further reveals that, when Mr. Korbel was deposed[2] in January of 2006, he made no mention of his alleged determination that National was entitled to an offset. In fact, during his deposition, Mr. Korbel recalled a conversation he had with Ms. Irwin prior to the receipt of a demand letter from Mr. Burns wherein he stated:

> I had met with Chrissie and we figured out where the error occurred was on the calendar, however they did it, okay, when she explained it to me -- she showed me that the way it was done on the calendar was screwed up. Somebody hasn't used the calendar to make sure the 90 day -- what -- whatever it was -- and she explained it to me. I said, well, we screwed up. She says, yeah, but we're correcting it and he will get the extra money.

In a letter dated August 6, 2003, Mr. Burns made demand upon National for outstanding back pay. When Mr. Korbel was asked at his deposition what his reaction was when he became aware that Mr. Burns had made a written demand for outstanding back pay, Mr. Korbel answered, "I was rather surprised to see it, so I took

---

[2]The trial court allowed the deposition of Mr. Korbel to be admitted into the note of evidence.

7

it to Chrissie and she says [sic] I -- my recollection is it was something to the effect that I thought all this had been taken care of long ago. . . ."

Based upon our review of the record in this matter, we find clear error in the trial court's determination that National presented a good-faith, non-arbitrary defense to liability for its failure to pay to Mr. Burns the wages he was owed. There simply does not exist any reasonable factual basis for the trial court's finding that penalty wages were not due. The trial court was clearly wrong and manifestly erroneous on the issue of penalty wages. The testimony elicited by National at trial was suspect, self-serving, and insufficient; further, said testimony was soundly impeached through the use of deposition testimony. For this reason, we reverse the trial court's judgment denying Mr. Burns penalty wages and award him penalty wages in the amount of $14,400.00 in accordance with La.R.S. 23:632[3]. Further, we award Mr. Burns additional attorney fees in the amount of $2,500.00 for work done on appeal.

**DECREE**

For the foregoing reasons, the judgment of the trial court relative to penalty wages is reversed, and Mr. Burns is awarded $14,400.00 in penalty wages and $2,500.00 in additional attorney fees for work done on appeal. Costs of this appeal are assessed against the Defendant/Appellee, National Communications, Inc.

**REVERSED AND RENDERED.**

---

[3]Based on the trial court's award to Mr. Burns of $1,280.00 for eight days of wages, we compute Mr. Burns' daily wage as $160.00. Therefore, in accordance with La.R.S. 23:632, to determine Mr. Burns' penalty wages, we have multiplied $160.00 by ninety, the result of which is $14,400.00.